UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CHERYL CROCHET, | : | Case No.  3:20-cv-00079 |
| | : | |
| Plaintiff, | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ENTRY

**I.   Introduction**

Plaintiff Cheryl Crochet brings this case challenging the Social Security Administration's denial of her application for a period of disability and Disability Insurance Benefits.  She asserts that since May 1, 2014, she no longer has been able to work a substantial paid job due to depression, anxiety, back pain, and interstitial cystitis. Administrative Law Judge (ALJ) Laura Twilley concluded that Plaintiff was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #12), the Commissioner's Memorandum in Opposition (Doc. #14), Plaintiff's Reply (Doc. #15), the administrative record (Doc. #10), and the record as a whole.

Plaintiff requests that the Court overturn the non-disability finding.  The Commissioner asks the Court to affirm ALJ Twilley's non-disability decision.

**II.     Background**

Plaintiff was 60 years old on the date ALJ Twilley issued a decision in her case, placing her in the category of "closely approaching retirement age" for social-security purposes. *See* 20 C.F.R. § 404.1563, §404.1568(d)(4). She has an associate's degree in nursing and has worked as a customer service representative, nursing service director, general duty nurse, and cashier checker. (Doc. #10 at PageID # 302, 310).

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. #10 at PageID # 49-51, 54-58) and Plaintiff's Statement of Errors. (Doc. #12 at PageID # 1085-90). The Commissioner referred to the ALJ's recitation of the relevant evidence. (Doc. #14 at PageID # 1110). Rather than repeat these summaries, the Court will focus on the medical records and opinions in the discussion below.

**III.    Standard of Review**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability," as the Social Security Act defines it, has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

An ALJ's non-disability decision is affirmed unless he or she "failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009) (citations omitted); *cf. Blackburn v. Comm'r of Soc. Sec.*, 78 F. App'x, 45, 47 (6th Cir. 2018) ("We review the administrative law judge's application of legal standards with fresh eyes and factual findings for substantial evidence."). "Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F. 3d 708, 722 (6th Cir. 2014). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F. 3d 234, 241 (6th Cir. 2007). If the ALJ applies the correct legal criteria and substantial evidence supports the ALJ's factual conclusions, the decision is affirmed "even if substantial evidence exists in the record supporting a different conclusion." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citation omitted).

Conversely, "[e]ven if supported by substantial evidence . . ., a decision of the Commissioner will not be upheld where [an ALJ] fails to follow [the Commission's] own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007); (citations omitted); *see, e.g., Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013) (remanding because ALJ's "more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that

the regulation requires"); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004) (remanding due to ALJ's failure to provide "good reasons," as the Regulations require, for not crediting treating physician's opinion).

## IV. **The ALJ's Decision**

As noted previously, it fell to ALJ Twilley to evaluate the evidence connected to Plaintiff's application for benefits. She did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. At Step 1, she found that Plaintiff has not engaged in substantial gainful employment since May 1, 2014, the alleged onset date. (Doc. 10 at PageID# 48). At Step 2, the ALJ determined that Plaintiff has the severe impairments of obesity, diabetes, diabetic neuropathy, post laminectomy syndrome, hypothyroidism, and opiate dependence. *Id.* According to ALJ Tilley, at Step 3, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 52.

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except as follows[:] the claimant should not climb ropes, ladders, or scaffolds. She can occasionally climb ramps and stairs, kneel, crouch, crawl, and balance on uneven, moving or narrow surfaces. She should perform no work involving any exposure to unprotected heights, dangerous moving machinery, or commercial driving. [Plaintiff] should not engage in production rate work or strict production quotas.

*Id.* at 53. With these abilities, Plaintiff could engage in her past relevant work as a cashier checker. This work does not require the performance of work-related activities precluded by Plaintiff's RFC. *Id.* at 59. Her ability to do her past relevant work meant she was not under a disability and not eligible to receive Disability Insurance Benefits. *Id.*

V. **Discussion**

Plaintiff raises three issues as to the ALJ's decision. In the first two contentions, she asserts that the ALJ erred in weighing the medical opinions of treating source Denise Rodney, M.D., and by relying on the opinions of the state agency reviewing physicians. (Doc. # 12, PageID # 1092-98). Plaintiff also argues that the ALJ erred by failing to find her depression and anxiety were severe impairments. *Id.* at 1098-1103.

The Commissioner counters that the ALJ properly evaluated the record evidence, including the medical source opinions, to reasonably determine that Plaintiff could perform the work contemplated within her RFC. (Doc. # 14).

**A. Medical Source Opinions as to Plaintiff's Physical Impairments**

Because Plaintiff's claim was filed before March 27, 2017, the treating physician rule described in 20 C.F.R. § 404.1527 applies. Those regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers*, 486 F.3d at 242 (citations omitted). The rule is straightforward: "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion "is well-supported by

medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

"Separate from the treating physician rule, but closely related, is the requirement that the ALJ 'always give good reasons' for the weight ascribed to a treating-source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)(2); other citation omitted)); *see Wilson*, 378 F.3d at 544. "The purpose of the good reasons rule is twofold: first, 'to let claimants understand the disposition of their cases'; and second, to 'ensure[ ] that the ALJ applies the treating physician rule and permit[ ] meaningful review of the ALJ's application of the rule.'" *Id.* (citations omitted; brackets *sic*).

The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility for determining a claimant's residual functional capacity. *See* e.g., 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner."). Moreover, the Social Security Act and agency regulations require an ALJ to determine a claimant's

residual functional capacity based on the evidence as a whole. 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1520(a)(4)(iv) ("the administrative law judge . . . is responsible for assessing your residual functional capacity"). The ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite his or her impairment(s) – submitted by an individual's treating source or other acceptable medical sources." *Id.* (footnote omitted).

In certain circumstances, however, an ALJ's failure to give good reasons for rejecting the opinion of a treating source may constitute *de minimis* or harmless error. *Wilson*, 378 F.3d at 547. *De minimis* or harmless error occurs: (1) if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of the procedural safeguard of the good reasons rule even though an ALJ has not complied with the express terms of the regulation. *Id.*

Plaintiff argues that ALJ Twilley erred by improperly evaluating and weighing Dr. Denise Rodney's February 7, 2017, interrogatory responses. (Doc. #12 at PageID# 1092-96). In that statement, Dr. Rodney wrote that she began treating Plaintiff in July 2013 and had seen her about 33 times over the course of her treatment. (Doc. #10 at Page ID# 801). Dr. Rodney also reported that Plaintiff's diagnoses included hypertension, diabetes mellitus, asymptomatic premature ventricular contraction, chronic back pain, depression,

7

anxiety, insomnia, and hyperlipidemia. *Id*. Dr. Rodney opined that Plaintiff cannot sit or stand continuously for more than an hour at a time; cannot stand for a combined total of more than two hours per eight-hour workday; and cannot sit for more than three hours total during an 8-hour work day. *Id.* at 802. Dr. Rodney also opined that Plaintiff should avoid lifting greater than 10 pounds occasionally, and should never carry 11 pounds or more. *Id.* Dr. Rodney concluded that "even under the best circumstances," Plaintiff would miss 20 work days per month. *Id*. at 803.

Contrary to Plaintiff's contentions, the ALJ considered Dr. Rodney's opinion and provided good reasons for finding it was entitled to only little weight, rather than controlling or deferential weight. *Id.* at 58. First, she recognized that under the treating physician rule, treating physicians' opinions generally are afforded deference. She explained:

> The opinion of Denise Rodney, M.D. is a treating source statement (Exhibit 6F). As such, for claims filed before March 27, 2017, the relevant regulations found at 20 CFR 404.1527(c)(2) and 416.927(C)(2) state as follows:
>
>> If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.
>
> The undersigned considered the following factors to determine the weight not given to the treating source medical opinion: the length of the treatment relationship and the frequency of the examination; the nature and extent of the treatment relationship; the supportability of the opinion, the consistency of the opinion, any relevant specialty of the treating source, and other relevant factors.

(Doc. #10 at PageID# 58).

With that framework in mind, the ALJ articulated good reasons for assigning Dr. Rodney's opinions "little weight." She found Dr. Rodney's checklist statement was both internally unsupported and unsupported by the treatment record. *Id.* at 58. This Court's review confirms that Dr. Rodney's opinion sets forth no explanation for the restrictions she provided.

Given the conclusory and vague nature of Dr. Rodney's opinion, substantial evidence supports the ALJ's decision to discount it. Indeed, other district courts have upheld an ALJ's decision for similar reasons. *See, e.g., Phillips v. Berryhill*, No. 3:16-CV-193-CHL, 2017 WL 6045451, at *4 (W.D. Ky. Dec. 6, 2017). In *Phillips*, the court affirmed the ALJ's decision rejecting the treating physician's opinion on the basis that it was vague, unexplained, and exaggerated. *See id*. Upon review of the treating physician's opinion, the court noted that the treating physician wrote only "'MRI' and 'back surgery'" to explain the basis for any functional limitations. *Id.* (citation omitted). The court found such explanation "both unclear and unhelpful in judging the rationale behind the limitations [the treating physician] placed on [the p]laintiff." *Id*. Moreover, the treating physician "did not attach any MRI results to her opinion or explain how specifically the 'MRI' and 'back surgery' supported her suggested limitations." *Id.*

Ultimately, the court in *Phillips* concluded that, "[b]ecause of the conclusory and explanation-free nature of [the treating physician's stated] limitations and the lack of supporting, objective findings, substantial evidence support[ted] the ALJ's decision to

9

deny her opinion controlling weight." *Id.* (citing F.R. § 404.1527(c)(3) (stating that the more a medical source presents relevant evidence and explains the basis behind her medical opinion, the more weight the ALJ will afford to it)). *Id.* As the court there noted, "[t]he lack of objective medical evidence to support the [treating source] opinion qualifies as a 'good reason' as used in 20 C.F.R. § 404.1527(c)." *See also Acosta v. Comm'r of Soc. Sec.*, No. 17-12414, 2018 WL 7254256, at *9-10 (E.D. Mich. Sept. 6, 2018), *report and recommendation adopted*, No. 17-12414, 2019 WL 275931 (E.D. Mich. Jan. 22, 2019) (holding that treating physician's "vague" opinions could not be "translate[d] into functional limitations that [could] be properly incorporated into an RFC," because, *e.g.*, the opinion did "not explain how plaintiff was limited or whether she could only do certain activities for a certain amount of time in each day"); *Hanna v. Colvin*, No. 5:13CV1360, 2014 WL 3749420, at *15 (N.D. Ohio July 30, 2014) (upholding ALJ's decision rejecting treating physician's opinion as incomplete and internally inconsistent, and noting that "courts have upheld an ALJ's rejection of a physician opinion on the grounds that it is inconsistent, unclear, or vague"); *Bennett v. Comm'r of Soc. Sec.*, No. 1:07-CV-1005, 2011 WL 1230526, at *4 (W.D. Mich. Mar. 31, 2011) (upholding ALJ's decision discounting physician's vague opinion) (citing *Tempesta v. Astrue*, No. CV-08-00003 (FB), 2009 WL 211362, at *7 (E.D.N.Y. Jan. 28, 2009) (characterizing treating physician's opinion as "vague" and of little value)).

Like the treating physician in *Phillips*, Dr. Rodney failed to identify objective medical evidence in the record that would substantiate the limitations she imposed.

10

Consequently, Plaintiff has failed to show that the ALJ committed reversible error as to the weight she accorded that opinion.

Plaintiff further asserts that the ALJ's "brief opinion[-]weighing fails to contain even a single evidentiary citation." *See* Doc. #12 at PageID# 1093. However, review of the ALJ's decision reveals that the ALJ referred back to her earlier discussion of the medical records. *Id.* at 54. Indeed, her opinion details various inconsistencies as well as benign or mild exam findings. For example, Dr. Rodney's records from 2014 showed that Plaintiff was being treated with medications because she was pre-diabetic. *Id.* at 466. The ALJ considered that in February 2017, the same month Dr. Rodney provided her assessment, she stated that Plaintiff had been diagnosed with diabetes without complications and without long-term use of insulin, and that she was maintained on oral medications and mostly was compliant with treatment. *Id.* at 56, citing to 894, 896.

Furthermore, even assuming *arguendo* that the ALJ's discussion was technically insufficient, remand would not be warranted. If technical compliance is lacking, an ALJ may satisfy the procedural safeguards by implicitly providing sufficient reasons for not giving a treating physician's opinion controlling weight. For example, in a case where an ALJ failed to state good reasons for giving the opinions of two treating physicians little weight, the Sixth Circuit nonetheless concluded that the ALJ's analysis of the record evidence adequately addressed the treating physicians' opinions by indirectly attacking both their supportability and their consistency. *Nelson v. Comm'r of Soc. Sec.,* 195 F. App'x. 462, 470 (6th Cir. 2006); *see also Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. App'x.

435, 440 (6th Cir. 2010) (citing *Nelson*, *supra*) ("An ALJ may accomplish the goals of the procedural requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with evidence in the record.")).

When determining whether an ALJ indirectly attacked the treating physician's opinion, "courts look at the ALJ's decision itself, not the other evidence in the record." *Coldiron*, 391 F. App'x. at 440. Here, the ALJ's comments about Dr. Rodney's opinions suffice to illustrate their lack of consistency and supportability. The ALJ therefore did not err in declining to assign Dr. Rodney's opinions controlling weight.

Plaintiff's second argument is an extension of her first: "While the ALJ entirely rejects Dr. Rodney's opinions, she purports to embrace the opinions of Drs. Siddique and Klyop, the state agency's early record reviewing consultants." (Doc. #12 at PageID # 1096). After reviewing Plaintiff's medical records, Mehr Sidedique, M.D. and Gerald Klyop, M.D., state agency physicians, found that Plaintiff could sit, stand, and walk up to six hours each per day and lift no more than 10 pounds frequently or 20 pounds occasionally. (Doc. #10 at PageID #112-14, 130-32). Dr. Siddique found that Plaintiff could frequently climb ramps or stairs, while Dr. Klyop found she could occasionally climb ramps or stairs. They agreed she was able to crouch frequently, occasionally crawl, but should never climb ladders, ropes, or scaffolds. Both doctors opined that Plaintiff should avoid all exposure to unprotected heights, hazardous machinery, and commercial driving. *Id.* at 114-15, 131-32. The ALJ assigned their assessments significant weight, finding they were consistent with the record. *Id.* at 57. The ALJ added that the record also supported

occasional limitations in kneeling, crouching, and crawling, based on a functional capacity evaluation performed in November 2015. *Id.*, citing to #636-39.

Plaintiff contends that the ALJ provided no explanation for her reliance upon these opinions other than an unelaborated allusion to "the medical record." (Doc. #12 at PageID# 1097, citing to 57). Citing *Gayheart*, Plaintiff also contends that the ALJ failed to scrutinize these state agency physician opinions to the same degree as the opinions of Dr. Rodney. In *Gayheart*, the Court held in relevant part that an ALJ commits reversible error by subjecting the opinions of the claimant's treating physicians to closer scrutiny than the opinions of state agency physicians. *See Gayheart*, 710 F.3d at 379. In that case, the ALJ rejected the opinions of the plaintiff's treating physicians for alleged internal inconsistencies and for being inconsistent with the record as a whole, while at the same time accepting the opinions of the state agency physicians that suffered from the same flaws. *Id.*

The Court concludes that *Gayheart* is inapposite here, where the ALJ does not appear to have scrutinized the opinions of Plaintiff's treating physician more closely than those of the state agency consultants, or to have applied a double standard in evaluating the medical evidence. As noted above, Dr. Rodney's assessment was cursory, somewhat equivocal, and unsupported by treatment notes or specific examples that substantiated her clinical conclusions. Plaintiff does not explain how these opinions warrant specific additional restrictions that the ALJ failed to accommodate. It is her burden to do so. See, *e.g., Frye v. Soc. Sec. Admin.*, No. 3:17-1466, 2018 WL 6710039, at *6 (M.D. Tenn. Dec.

4, 2018), *report and recommendation adopted sub nom. Frye v. Comm'r, Soc. Sec. Admin.*, No. 3:17-CV- 01466, 2018 WL 6696938 (M.D. Tenn. Dec. 20, 2018) (rejecting plaintiff's reliance on opinions containing limitations more restrictive than RFC because plaintiff failed to meet burden to identify how opinions "undermine the formulated RFC").

### B. Severe mental impairments at step two and mental residual functional capacity.

Plaintiff's final argument focuses on the ALJ's labeling of her alleged depression and anxiety as "nonsevere" impairments. She contends that because she was diagnosed with and received some treatment for such impairments, she should have further limitations. However, beyond those diagnoses, the evidence contains no objective findings to demonstrate a reasonable probability the ALJ would have found Plaintiff disabled had she deemed her mental impairments severe. *See NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (1969), quoted in *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"); *Fisher v. Bowen*, 869 F.2d 1055, 1056 (7th Cir. 1989) (stating that "[n]o principle of administrative law or common sense requires [a court] to remand a case . . . unless there is reason to believe that the remand might lead to a different result").

At step two of the five-step sequential evaluation process, an ALJ considers the "medical severity of [the claimant's] impairments." 20 C.F.R. § 404.1520(a)(4). "An impairment or combination of impairments is not severe if it does not significantly limit

[the applicant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities are defined as "abilities and aptitudes necessary to do most jobs." *Id.* at § 404.1521(b).

The Sixth Circuit has construed step two as a "*de minimis* hurdle." *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted). Under this approach, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (citation omitted). As explained by the Court, "this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious disability claims without proper vocational analysis." *Id.* (citations omitted). However, "the severity requirement may still be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint." *Long v. Apfel,* 1 F. App'x 326, 331 (6th Cir. 2001) (internal quotations and citations omitted).

In the present case, the ALJ found at step two that Plaintiff had several severe physical impairments but only opiate dependence as a severe mental impairment. (Doc. #10 at *PageID* #48). Substantial evidence supports the ALJ's findings.

Significantly, Plaintiff misquotes the ALJ's decision as stating, "There are also *no* medical opinions regarding her mental health and any limitations her diagnosed anxiety and depression caused." (Tr. 49)." (emphasis added). *See* Doc. # 12 at PageID # 1099. In fact, the ALJ clearly was aware of the medical source opinions as to Plaintiff's mental

15

health, stating, "There **are** also medical opinions regarding her mental health and any limitations her diagnosed anxiety and depression caused." *Id.* at 49 (emphasis added). When evaluating the severity of Plaintiff's mental impairments, the ALJ acknowledged that the record contains treating source opinions along with a separate mental health report from a mental health expert hired by Social Security to evaluate Plaintiff. *Id.*

Plaintiff's mental health counselor, Thomas Butler, PCC, LSW, provided several opinions as to Plaintiff's psychiatric limitations. In July 2015, Mr. Butler opined that Plaintiff had moderate to severe limitations in concentration and functioning in proximity to others without being distracted. *Id.* at 966. He also found Plaintiff had a moderate to severe limitation in her ability to complete tasks in a designated period of time and perform complex tasks on a sustained basis. He believed she had moderate functional limitations associated with her ability to make simple decisions, maintain socially appropriate behavior, and perform simple tasks on a sustained basis. *Id.* In August 2015, Mr. Butler opined that Plaintiff had difficulty sustaining attention, had a low tolerance to stress, and extreme difficulty getting along with others. *Id.* at 963-94.

The following June, Mr. Butler completed a mental health evaluation form in which he estimated Plaintiff could return to work on August 1, 2016, with restricted duty until September 1, 2016. *Id.* at 961.

On behalf of the state agency, Mr. Butler also provided an opinion in September 2016, in which he indicated that Plaintiff's recent Montreal Cognitive Assessment scores were within the normal range. *Id.* at 798. Mr. Butler found that Plaintiff had trouble

maintaining concentration and focus for longer than 10 minutes. He also opined that Plaintiff was severely to moderately impaired in her ability to process general instructions and remember to do important things. She reported difficulty getting out of bed some days due to depression, which resulted in poor hygiene. He also reported that Plaintiff had significant problems with social interaction in general, reporting increased anxiety leading to level of isolation, little or no physical activity, and increase irritability and conflict with others who are in a supervisory position. He wrote she had a very low stress tolerance. According to Mr. Butler, Plaintiff reported a decrease in the frequency of anxiety and panic symptoms, although she continued to report depression. *Id.* at 799. When Plaintiff began treatment, she reported panic attacks three to five times per week, but now was reporting fewer than five panic attacks per month. *Id.* at 800.

In weighing Mr. Butler's opinions, the ALJ determined that his opinions fluctuated over time, citing a June 2016 release indicating Plaintiff could return to full work duties as of September 1, 2016, followed by an opinion setting moderate to severe limitations later in September 2016, even though she reported improved symptoms. Due to internal inconsistencies, the ALJ did not give Mr. Butler's opinions controlling weight. She did assign them partial weight, however, as many of the mental limitations were supported by Plaintiff's severe impairment of opioid dependence. In addition, the ALJ noted that "the mental limitations included in the residual functional capacity also account for the claimant's non-severe mental health conditions included in Dr. Butler's findings and opinions." *Id.* at 51.

George Schulz, Ph.D., the state agency's consulting psychologist, concluded that Plaintiff would be able to understand and apply instructions in the work setting with average intellectual functioning. She is mentally capable of completing routine or repetitive activities of daily living tasks both at home and in the community or in a job setting. Plaintiff is able to respond to coworkers and supervisors in a work setting. Plaintiff is likely to have some difficulty responding appropriately to work pressure. *Id.* at 1077-78. Plaintiff argues the ALJ gives this opinion "significant weight" but provides no justification for doing so, other than a cursory and poorly-worded citation to "the claimant's examination and expertise. (sic)." (Doc. #12 at PageID # 1101). The ALJ found that Dr. Schulz's opinion is consistent with only "mild" limitations. *See* 20 C.F.R. § 404.1520a(d)(l).

The ALJ relied on the opinions of the state agency reviewing psychologists, Drs. Lisa Foulk, Psy.D. and Denise Rabold, Ph.D. (Doc. #10 at PageID # 49-50). Dr. Foulk found that Plaintiff had two non-severe mental impairments: affective disorder and anxiety disorder. *Id.* at 111. She opined that Plaintiff had no restriction of activities of daily living and mild difficulties in maintaining concentration, persistence, or pace. But Plaintiff had no difficulties in maintaining social functioning and no repeated episodes of decompensation. *Id.* She concluded that Plaintiff's mental health conditions do not pose a significant limitation to her ability to work and she has no severe psychological impairment. *Id.* at 112. Dr. Rabold affirmed Dr. Foulk's assessment. *Id.* at 128-30.

Pursuant to the regulatory guidelines that were in effect at the time of the decision in Plaintiff's case, when determining the weight to assign to a non-treating medical source such as a state agency reviewing psychologist, an ALJ is to consider the following factors: the treatment relationship; supportability; consistency; area of specialization of the source; and "other factors," such as familiarity with SSA programs. 20 C.F.R. § 404.1527(c)(2)-(6). However, an ALJ need not affirmatively discuss all such factors. *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (finding no requirement that an ALJ expressly consider each of the factors in 20 C.F.R. § 404.1527(c) within the written decision). The ALJ's failure to address each factor explicitly did not constitute error.

Finally, the ALJ reasonably relied on Plaintiff's treatment records. Evidence in the record shows improvement of mental symptoms as Plaintiff's pain control improved. (Doc. #10 at PageID # 49). For example, Dr. Rodney observed in her July 1, 2015 treatment note that Plaintiff's psychiatrist said her anxiety and depression are due to her pain. *Id.* at 498. Her May 12, 2013 treatment note stated: "Anxiety/depression: better since her pain has improved." *Id.* at 528.

Plaintiff has failed to demonstrate that the ALJ would have found her disabled had she confirmed the diagnoses of depression and anxiety.. As explained above and in the ALJ decision, substantial evidence supported the ALJ's determination in assessing Plaintiff's RFC that Plaintiff's non-severe impairments led to mental limitations on "engag[ing] in production rate work or strict production quotas." *Id.* at 53. With any impairment, a claimant must do more than merely show the presence of an impairmen. in order to

establish that it is disabling. *See, e.g., Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) (diagnosis alone does not show disability). Because Plaintiff failed to do so, the ALJ did not commit reversible error at step two.

Accordingly, for the above reasons, Plaintiff's Statement of Errors lacks merit.

**IT IS THEREFORE ORDERED THAT:**

    1. The Commissioner's non-disability finding is **AFFIRMED**; and

    2. The case is terminated on the Court's docket.


March 26, 2021                          *s/Sharon L. Ovington*
                                             Sharon L. Ovington
                                             United States Magistrate Judge